614 S.E.2d 680

WELLINGTON POWER CORPORA-
TION, a Pennsylvania Corpora-
tion, Plaintiff

v.

CNA SURETY CORPORATION, dba CNA
Commercial Insurance, a Delaware
Corporation, Defendant

and

W.G. Tomko, Incorporated, a
Pennsylvania Corporation,
Plaintiff

v.

CNA Surety Corporation, dba CNA Com-
mercial Insurance, a Delaware Cor-
poration, Defendant.

Nos. 31869, 31870.

Supreme Court of Appeals of
West Virginia.

Submitted March 8, 2005.

Decided May 16, 2005.

James Bryan Edwards, Cranston & Edwards, Morgantown, and Roy S. Cohen, John A. Greenhall, Cohen, Seglias, Pallas, Greenhall & Furman, Philadelphia, PA, for Wellington and Tomko.

Billy Atkins, Atkins & Oblak, P.L.L.C., Morgantown, and Kevin P. Lucas, James R. Walker, Manion, McDonough & Lucas, P.C., Pittsburgh, PA, for CNA.

MAYNARD, Justice:

This Court is called upon to answer the following certified question from the Circuit Court of Monongalia County:

> In a public building project in West Virginia, does a "pay if paid" condition precedent clause violate West Virginia public policy, as articulated in the West Virginia Public Bond Statute (W.Va.Code § 38–2–39), so as to entitle a subcontractor to proceed with a claim against a contractor's surety bond, despite the terms of its subcontract that the contractor itself is not liable for payment to the subcontractor because of the failure of the same "pay if paid" condition precedent clause?

For the reasons that follow, we answer the question in the negative.

## I.

## FACTS

Plaintiffs Wellington Power Corp. (hereafter "Wellington") and W.G. Tomko, Inc. (hereafter "Tomko"), contracted with the Dick Corporation (hereafter "Dick") to provide various services on the construction of the West Virginia University Life Sciences Building in Morgantown. Specifically, Dick contracted with Wellington for electrical work and with Tomko for mechanical and plumbing work. These contracts contain the following "pay-if-paid" provision:

> Contractor [Wellington and Tomko] agrees and acknowledges that payment of the Contract Sum shall be made only form [sic] funds which are due from [WVU] that [Dick] has actually received in hand from [WVU] and designated by [WVU] for disbursement to Contractor. Contractor agrees to look solely to such funds for payment. Contractor understands and agrees that [Dick] shall have no liability or responsibility for any reason whatsoever for any amounts due or claimed to be due to Contractor except to the extent that [Dick] has actually received funds from [WVU] that are due from [WVU] specifically designated for disbursement to Contractor.

Similar language appears in the Bid Package General Conditions. These General Conditions also require that any dispute or claim that is related to the actions of West Virginia University (hereafter "WVU") or its architect must be prosecuted and resolved in accordance with the dispute resolution procedures set forth in Dick's Construction Management Agreement with WVU. In addition, according to the Supplementary General Conditions applicable to this Agreement, any and all claims against WVU must be filed in the West Virginia Court of Claims.

Because the construction of the Life Sciences Building was a public project, Dick obtained a Labor and Material Payment Bond from Defendant CNA Surety Corporation[1] (hereafter "CNA") as mandated by W.Va.Code § 38–2–39 (2004).[2] The bond

---

1. Cross–Petitioner and Defendant below explains in a footnote in its brief that Dick actually obtained its payment bond from National Fire Insurance Company of Hartford, but Plaintiffs have improperly named CNA, a related company, as Defendant below. Nevertheless, Cross–Petitioner refers to itself as CNA in its brief "[t]o avoid confusion." This Court will follow suit in this opinion and refer to Cross–Petitioner herein and Defendant below as "CNA."

2. At the time Dick acquired the bond, the 1929 version of W.Va.Code § 38–2–39 was in effect. The 2004 amendment of the code section added a paragraph, the language of which is not relevant to this case. In the remainder of this opinion, we will cite to the 2004 version of the code section. The portion of this code section that is applicable to the instant case provides:

> It shall be the duty of the state commissioner of public institutions, and of all county courts,

named Dick as principal and WVU as obligee. Pursuant to the bond's terms, CNA and Dick bound themselves jointly and severally to assure the payment by Dick of the claims of certain persons supplying labor and materials for the project.

Wellington and Tomko ultimately sued CNA under the payment bond in the Circuit Court of Monongalia County. In their separate complaints, Wellington and Tomko alleged that Dick owed them monies including retainage, change order, and directed overtime work, as well as damages resulting from delays, disruptions, and inefficiencies on the construction project. Wellington alleges in its brief that it is currently owed $929,913.67, and Tomko alleges that it is currently owed $304,631.32. In both cases, CNA filed motions to dismiss Plaintiffs' complaints, based on the pay-if-paid provision, which were both denied. Wellington, Tomko, and CNA then filed separate motions for certification. Pursuant to W.Va.Code § 58–5–2 (1998), the circuit court certified the question set forth above to this Court and answered it in the affirmative. We now proceed to answer the certified question.

## II.

### STANDARD OF REVIEW

■ "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

boards of education, boards of trustees, and other legal bodies having authority to contract for the erection, construction, improvement, alteration or repair of any public building or other structure, or any building or other structure used or to be used for public purposes, to require of every person to whom it shall award, and with whom it shall enter into, any contract for the erection, construction, improvement, alteration or repair of any such public building or other structure used or to be used for public purposes, that such contractor shall cause to be executed and delivered to the secretary of such commissioner or other legal body, or other proper and designated custodian of the papers and records thereof, a good, valid, solvent and sufficient bond, in a penal

## III.

### DISCUSSION

■ First, we note that Plaintiffs are challenging the unambiguous provisions of a valid contract. "The fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W.Va. 559, 131 S.E. 253 (1926). It is not disputed that the agreements that Dick executed with Plaintiffs contain the essential elements of a valid contract. We also have held that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syllabus Point 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962). In framing its certified question, the circuit court recognized, and this Court agrees, that the contractual provision at issue is an unambiguous "pay-if-paid" condition precedent clause. Our law provides that "[u]nder the broad liberty of contract allowed by law, parties may make performance of any comparatively, or apparently, trivial and unimportant covenant, agreement, or duty under the contract a condition precedent, and, in such case, the contract will be enforced and dealt with as made." Syllabus Point 2, *Watzman v. Unatin*, 101 W.Va. 41, 131 S.E. 874 (1926). Therefore, Plaintiffs bear a heavy burden in

sum equal at the least to the reasonable cost of the materials, machinery, equipment and labor required for the completion of such contract, and conditioned that in the event such contractor shall fail to pay in full for all such materials, machinery, equipment and labor delivered to him for use in the erection, construction, improvement, alteration or repair of such public building or other structure, or building or other structure used or to be used for public purposes, then such bond and the sureties thereon shall be responsible to such materialman, furnisher of machinery or equipment, and furnisher or performer of such labor, or their assigns, for the full payment of the full value thereof.

urging the non-enforcement of their contracts with Dick in their action against Dick's surety in light of the fact that these are valid, unambiguous agreements.

Plaintiffs posit several arguments in their challenge to the pay-if-paid clause at issue. First, they argue that application of the pay-if-paid condition precedent clause to their action against the CNA surety bond violates the State's public policy found in the public bond statute, W.Va.Code § 38–2–39, the purpose of which is to protect suppliers of labor and material to public construction projects and to give them a remedy other than a mechanic's lien which cannot attach to public property. According to Plaintiffs, several courts have found pay-if-paid condition precedent clauses unenforceable as a contravention of public policy expressed in both mechanic's lien statutes and public bond statutes.[3]

■ We begin our analysis with the proposition that the freedom to contract is a substantial public policy that should not be lightly dismissed. Several courts have recognized the public policy of freedom of contract. *See e.g., Massachusetts Mut. Life Ins. Co. v. Woodall*, 304 F.Supp.2d 1364, 1371 (S.D.Ga.2003) (stating that "Georgia public policy favors freedom of contract"); *McMillan v. Allstate Indem. Co.*, 135 N.M. 17, 21, 84 P.3d 65, 69 (2003) (opining that "New Mexico public policy favors freedom to contract and enforces contracts that do not violate law or public policy"); *Green v. Safeco Life Ins. Co.*, 312 Ill.App.3d 577, 581, 245 Ill.Dec. 140, 143, 727 N.E.2d 393, 396 (2000) (noting that "[p]ublic policy strongly favors the freedom to contract"); *Nationscredit Commercial v. Grauel Ent.*, 703 N.E.2d 1072, 1079 (Ind.Ct.App.1998) (explaining that "[o]ur Supreme Court has recently reiterated the well-established public policy of this state

which favors the freedom of contract between private parties"). Likewise, this State's public policy favors freedom of contract which is the precept that a contract shall be enforced except when it violates a principle of even greater importance to the general public. In the case of *State v. Memorial Gardens Development Corp.*, 143 W.Va. 182, 101 S.E.2d 425 (1957), we quoted the following language with which we still strongly agree:

> [Y]ou are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider,—that you are not lightly to interfere with this freedom of contract.

143 W.Va. at 191, 101 S.E.2d at 430, *quoting Baltimore & Ohio Southwestern Railway Co. v. Voigt*, 176 U.S. 498, 20 S.Ct. 385, 387, 44 L.Ed. 560 (1900). We have further opined that,

> Moreover, as a general rule, this Court enforces private agreements between parties, to the extent that such agreements do not conflict with the applicable law.

> Where parties contract lawfully and their contract is free from ambiguity or doubt, their agreement furnishes the law which governs them. It is the duty of the court to construe contracts as they are made by the parties thereto and to give full force and effect to the language used, when it is clear, plain, simple and

---

3. Plaintiffs cite cases from California, Connecticut, Florida, Illinois, New York, the Virgin Islands, Virginia, and several federal courts in support of their public policy argument. We have carefully considered these cases, and we do not find them persuasive. Several of the cases concern mechanic's lien or payment bond statutes that include anti-waiver language, unlike West Virginia's statute. *See e.g., Wm. R. Clarke Corp. v. Safeco*, 15 Cal.4th 882, 64 Cal.Rptr.2d 578, 938 P.2d 372 (1997). Also, we find the

federal cases cited inapposite in that they deal with the federal Miller Act, 40 U.S.C. § 1331 *et seq.*, the provisions of which have been deemed by courts to require payment from the contractor 90 days after the subcontractor completes its work in the absence of a clear and explicit waiver. *See e.g., U.S., Walton Technology v. Weststar Engineering*, 290 F.3d 1199 (9th Cir.2002). In regards to the remainder of the cited cases, we simply do not find their reasoning compelling.

unambiguous. 4B Michie's Jurisprudence *Contracts* § 40, at 56 (Repl. Vol. 1986) (footnotes omitted).

*Rollyson v. Jordan,* 205 W.Va. 368, 376, 518 S.E.2d 372, 380 (1999).

Freedom to contract, however, is not unfettered. This Court has recognized that "no action can be predicated upon a contract of any kind or in any form which is expressly forbidden by law or otherwise void." *State ex rel. Boone Nat. Bank v. Manns,* 126 W.Va. 643, 647, 29 S.E.2d 621, 623 (1944), *overruled on different grounds by State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992). As noted above, Plaintiffs do not claim that the contracts at issue are expressly forbidden by law but rather that their application to Plaintiff's suit against CNA is a contravention of public policy. Concerning the concept of public policy, we have explained:

> Much has been written by text writers and by the courts as to the meaning of the phrase "public policy." All are agreed that its meaning is as "variable" as it is "vague," and that there is no absolute rule by which courts may determine what contracts contravene the public policy of the state. The rule of law, most generally stated, is that "public policy" is that principle of law which holds that "no person can lawfully do that which has a tendency to be injurious to the public or against public good * * *" even though "no actual injury" may have resulted therefrom in a particular case "to the public." It is a question of law which the court must decide in light of the particular circumstances of each case.
>
> The sources determinative of public policy are, among others, our federal and state constitutions, our public statutes, our judicial decisions, the applicable principles of the common law, the acknowledged prevailing concepts of the federal and state governments relating to and affecting the safety, health, morals and general welfare of the people for whom government—with us—is factually established.

*Cordle v. General Hugh Mercer Corp.,* 174 W.Va. 321, 325, 325 S.E.2d 111, 114 (1984), *quoting Allen v. Commercial Casualty Ins.*

*Co.,* 131 N.J.L. 475, 477–78, 37 A.2d 37, 38–39 (1944). When asked to void a contract based on a public policy, this Court is mindful of our rule that "[t]he judicial power to declare a contract void as contravening sound public policy 'is a very delicate and undefined power,' and should be exercised only in cases free from doubt. *Richmond v. Railroad Co.,* 26 Iowa, 191." Syllabus Point 1, *Barnes v. Koontz,* 112 W.Va. 48, 163 S.E. 719 (1932).

In the instant case, we are confronted with two competing public policies. The first, which derives from W.Va.Code § 38-2-39, is "[t]he public policy of this state . . . to secure payment to the materialmen and laborers in the building of structures to be used by the public." *State, for Use of E.I. Dupont de Nemours & Co. v. Coda,* 103 W.Va. 676, 685, 138 S.E. 324, 328 (1927). The second, of course, is the freedom to contract as one chooses. After carefully weighing these policies, we conclude that the public policy of freedom of contract is more compelling and outweighs the public policy found in W.Va. Code § 38-2-39.

Public construction projects are generally large-scale operations that require the services of established and experienced subcontracting companies which fairly can be characterized as sophisticated commercial entities. These commercial entities are more likely than not to be competent in bargaining with contractors over the terms of their contracts. We believe that such entities generally should be free to enjoy the freedom to contract absent judicial intervention. In the instant case, for example, two commercial entities voluntarily agreed to a clear, unambiguous pay-if-paid condition precedent. Given such circumstances, we are extremely reluctant to intervene simply because a party to a valid and unambiguous contract subsequently seeks to avoid its enforcement. In addition, we are not convinced that pay-if-paid condition precedent clauses in public construction contracts do not have the salutary effect of keeping down construction and bonding costs as claimed by CNA. Our rule, stated above, provides that the power of this Court to void a contract as contravening public policy should be exercised only in

cases free from doubt. In the instant case, we doubt the desirability of declaring pay-if-paid condition precedent clauses like the one at issue unenforceable when applied to actions against a surety.

■ Plaintiffs complain that enforcement of the pay-if-paid clause at issue will undermine the public bond statute and render it useless. We disagree. Our holding in the instant case is limited to those circumstances in which subcontractors have voluntarily agreed to an unambiguous pay-if-paid condition precedent provision in their contract with the contractor. Further, even in cases involving pay-if-paid clauses, the public bond statute protects ·subcontractors where the contractor has received all funds from the public entity but nevertheless fails to pay its subcontractors.

Plaintiffs further contend that enforcement of the pay-if-paid clause, and the resulting lack of remedies available to Plaintiffs, will be a disincentive to companies to contract to work on construction projects involving the State of West Virginia. This Court is not aware of any difficulties encountered by contractors in hiring subcontractors to work on public construction projects due to pay-if-paid condition precedent clauses in construction contracts nor is there evidence of such difficulties in the record. As such, Plaintiffs' concerns are speculative and not based on actual widespread negative occurrences resulting from pay-if-paid clauses. We do not believe that such conjecture rises to a level that warrants this Court overturning its long-held public policy of freedom of contract.

■ Therefore, for the reasons stated above, we conclude that the public policy of freedom of contract outweighs the public policy found in the public bond statute in cases involving a subcontractor's action on a surety bond. Accordingly, we hold that in a public construction project, a pay-if-paid condition precedent clause in a contract between a subcontractor and a contractor does not violate the public policy of this State found in the public bond statute, W.Va.Code § 38-2-39 (2004). Thus, a pay-if-paid clause which prevents a subcontractor from proceeding against a contractor in the absence of the owner's payment to the contractor, also prevents the subcontractor from proceeding against the contractor's surety under a payment bond acquired by the contractor pursuant to W.Va.Code § 38-2-39 (2004).

According to Plaintiffs, however, even if this Court finds that the pay-if-paid clause does not violate public policy, CNA does not have the right to rely upon the clause. Plaintiffs explain that they are suing under the payment bond, not under their contracts with Dick, and that the payment bond does not incorporate the pay-if-paid condition precedent clause. Therefore, say Plaintiffs, given the public purpose of the public bond statute and the fact that they have completed their performance under the contracts, CNA should not have the right to rely on the pay-if-paid clause. We find Plaintiffs' argument to be at odds with our settled suretyship law.

■ "It is a fundamental precept of suretyship law that the liability of the surety is conditioned on accrual of some obligation on the part of the principal; the surety will not be liable on the surety contract if the principal has not incurred liability on the primary contract." *Star Contracting Corp. v. Manway Const. Co., Inc.*, 32 Conn.Supp. 64, 66, 337 A.2d 669, 670 (1973) (citations omitted). According to 72 C.J.S., *Principal and Surety* § 74 (1987),

In the absence of limitations or restrictions contained in the contract, the liability of the surety is coextensive with that of the principal, and the surety is not liable to the obligee unless its principal is also liable. Also, it is generally held that the liability of the surety can in no event exceed the liability of the principal. (Footnotes omitted).

Another authority expresses this principle as follows:

As a general rule, a surety on a bond is not liable unless the principal is, and, therefore, he may plead any defense available to the principal. Thus, a surety may set up in defense to an action against him any matter or any act of the creditor that operates as a discharge of the principal from liability.

74 Am.Jur.2d, *Suretyship* § 88 (2001). This Court adheres to these principles. In Syllabus Point 2 of *Gateway Communications v. John Hess, Inc.*, 208 W.Va. 505, 541 S.E.2d 595 (2000), we held that "[a]s a general rule, the liability of the surety is coextensive with that of the principal." Also, "[t]he obligation of a surety being accessory to that of his principal, the surety's liability is generally measured by the liability of the principal and cannot exceed it." Syllabus Point 1, *State ex rel. Mayle v. Aetna Casualty & Surety Co.*, 152 W.Va. 683, 166 S.E.2d 133 (1969). Finally, W.Va.Code § 45–1–3 (1923) provides that a surety shall be allowed to make any defense in any action instituted against it as could have been made by the principal in an action in which a judgment or recovery was had against the principal.

When we apply the above surety law to the facts of this case, it is plain that CNA cannot have liability under the CNA bond, as Dick's surety, where Dick has no liability. Under the clear and unambiguous terms of Dick's contracts with Plaintiffs, Dick has no liability for any amounts due to Plaintiffs except to the extent that Dick actually has received funds from WVU. Our law provides that "[a] surety does not insure his principal against loss but agrees to be answerable for any debt, default or miscarriage of such principal." Syllabus Point 2, *State ex rel. Mayle, supra.* Because Dick has not received funds from WVU, it has not incurred debt owed to Plaintiffs nor defaulted or miscarried on a debt owed to Plaintiffs. Further, "[u]nless a principal on an official bond becomes liable for some default of his duties, the surety on such bond cannot be liable." Syllabus Point 3, *State ex rel. Mayle.* Again, having not received funds from WVU, Dick has not become liable for a default of its duties. Therefore, CNA, as Dick's surety, likewise cannot be held liable. Plaintiffs would have us abrogate our established surety law under the instant facts. This we decline to do. Rather, we adopt the reasoning set forth in *Star Contracting Corp.*, 32 Conn.Supp. at 67–68, 337 A.2d at 671, as follows:

> construing the liability of the surety as coextensive with that of the principal does not subvert the public policy effected by [Connecticut's public bond statute] because that statute was not intended to afford legal recourse against a surety when no such recourse existed against the principal, i.e., the statute does not give the subcontractor something that he is not entitled to under his primary contract.

Accordingly, we find that the clear and unambiguous condition precedent language in the contracts between Dick and Plaintiffs prevent Plaintiffs from proceeding in an action against CNA as Dick's surety.

Finally, Plaintiffs contend that they should be permitted to recover under the payment bond because strict construction of their contract with Dick prevents forfeiture of their right of recovery. Plaintiffs explain that because they stand to lose the payment for services rendered because of the failure of a condition precedent, this condition precedent language must be expressly set forth in the CNA payment bond. We likewise find no merit to this argument.

As noted by Plaintiffs, our law states "[p]rovisions of a contract, effecting a forfeiture or exacting a penalty, are strictly construed against the party for whose benefit they were incorporated in the instrument." Syllabus Point 1, *Carbon Black Co. v. Gillespie*, 87 W.Va. 441, 105 S.E. 517 (1920). Also, "[a] covenant or condition, to suffice as the basis of a forfeiture clause in a contract, expressed in general terms, must be certain, definite and unequivocal in meaning." Syllabus Point 3, *Id.* However, as we explained above, CNA, as Dick's surety, is liable only to the extent that Dick is liable, and Dick's liability is determined by its contracts with Plaintiffs. Therefore, the operative provision at issue is not in the payment bond but in the construction contracts. A plain reading of these contracts indicates that the pay-if-paid condition precedent clause is certain, definite, and unequivocal in meaning. As a result, the condition precedent provision is to be enforced by this Court and not construed. Accordingly, we reject Plaintiffs' argument.

To summarize, we have found that the enforcement of the pay-if-paid condition precedent clause to Plaintiffs' action against CNA as surety does not violate the public

policy of this State. We further conclude that this Court's suretyship law prevents an action against CNA as surety where Dick, as principal, is not liable to Plaintiffs based on the pay-if-paid condition precedent clause. Finally, we have determined that the terms of Plaintiff's contract with Dick are certain, definite, and unequivocal and should be enforced rather than construed even if they work a forfeiture of sums owed Plaintiffs.

## IV.

## CONCLUSION

For the foregoing reasons, we answer the certified question as follows:

In a public building project in West Virginia, does a "pay if paid" condition precedent clause violate West Virginia public policy, as articulated in the West Virginia Public Bond Statute (W.Va.Code § 38–2–39), so as to entitle a subcontractor to proceed with a claim against a contractor's surety bond, despite the terms of its subcontract that the contractor itself is not liable for payment to the subcontractor because of the failure of the same "pay if paid" condition precedent clause?

Answer: No.

Certified question answered.

Chief Justice ALBRIGHT dissents and files a dissenting opinion joined by Justice STARCHER.

ALBRIGHT, Chief Justice, dissenting.

In reaching its conclusory decision that the need to encourage freedom to contract outweighs the public policy which underlies the legislative enactment of mechanic's lien and public bond statutes, the majority has seriously undervalued and misweighed the various interests implicated by the question of enforcing conditional payment provisions in construction contracts. Accordingly, I must respectfully dissent.

Because encumbrances to public property are disallowed as a general rule, mechanic's liens cannot be filed against public property. See J.E. Moss Iron Works v. Jackson Co. Court, 89 W.Va. 367, 109 S.E. 343 (1921). To avoid the problem created by exempting pub-

lic property from mechanic's liens, the Legislature enacted the payment bond statute set forth in West Virginia Code § 38–2–39 (Supp.2004). Without question, the purpose of the payment bond statute is to serve as a substitute mechanism for contractors and their laborers to collect moneys which they are owed in connection with work performed on public buildings or property. See syllabus, in part, Morton Motor Co. v. Fidelity & Cas. Co., 109 W.Va. 67, 152 S.E. 860 (1930) (recognizing that the payment bond required by W.Va.Code § 38–2–39 "secures [people contracting to perform work on public structures]... for the reasonable price of such materials, machinery, equipment, and labor sold and furnished by them for which they would be entitled to a mechanics' or laborers' lien if the structure were a private instead of a public one"); accord Everett Painting Co. v. Padula & Wadsworth Constr., Inc., 856 So.2d 1059, 1062 (Fla.App.2003) (stating that purpose of public bond statute is "to protect subcontractors and suppliers by providing them with an alternative remedy to mechanic's liens on public projects"). Despite recognizing that "[t]he public policy of this state is to secure payment to the materialmen and laborers in the building of structures to be used by the public," the majority nonetheless turns its collective back on this long-recognized and much-valued tenet of construction law. State ex rel. E.I. Du Pont De Nemours & Co. v. Coda, 103 W.Va. 676, 685, 138 S.E. 324, 328 (1927).

Preferring to protect the right of freedom to contract, the majority disavows the public policy of securing payment for materials furnished by vendors and work performed by laborers that is at the core of our mechanic's lien and public bond statutes. In doing so, the majority takes a position that is at odds with numerous jurisdictions throughout this country. See, e.g., Wm. R. Clarke Corp. v. Safeco Insur. Co., 15 Cal.4th 882, 64 Cal. Rptr.2d 578, 938 P.2d 372, 378–79 (1997) (holding that pay if paid provision was in effect waiver of mechanic's lien rights in violation of legislative anti-waiver scheme and ruling that such provision does not insulate either general contractors or their payment bond sureties from their contractual

obligations to pay subcontractors for work performed); *West–Fair Elec. Contrs. v. Aetna Cas. & Sur. Co.*, 87 N.Y.2d 148, 638 N.Y.S.2d 394, 661 N.E.2d 967, 971 (1995) (holding that "pay-when-paid clause which forces the subcontractor to assume the risk that the owner will fail to pay the general contractor is void and unenforceable as contrary to public policy"); *see generally* 8 *Williston on Contracts* § 19:58 at 490–91 (4th ed. 1998) (stating that "recent decisions and statutory enactments with respect to 'pay when paid' or 'pay if paid' clauses in construction contracts reveal ... a number of important jurisdictions declaring that such clauses violate public policy and will not be enforced").[1]

Those jurisdictions that uphold conditional payment clauses do so only where the intent of the contracting parties is unquestionably clear.[2] In *Thomas J. Dyer Co. v. Bishop International Engineering Co.*, 303 F.2d 655 (6th Cir.1962), the court rejected the general contractor's defense that the contractual language which provided that no money owed to the subcontractor was due until five days after the contractor's receipt of funds from the owner was a condition precedent that prevented payment where the owner was insolvent. Concluding "that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and material put into the project," the Sixth Circuit determined that the provision was designed to allow the contractor a reasonable period of time in which to pay the subcontractor for work performed. *Id.* at 661. The Sixth Circuit opined that the credit risk inherent in the general contractor's undertaking could be shifted to the subcontractor, but only where the contract contained

express language "clearly showing that to be the intention of the parties." *Id.*

While the *Dyer* case is relied upon by those who seek to enforce conditional payment provisions where the contracts at issue contain specific "pay if paid" or "pay when paid" language, enforcement of such language is still not automatic. Those courts that have adopted the *Dyer* approach of enforcing conditional payment clauses only when the contract terms undeniably demonstrate the intent of the parties still "recognize a general presumption against the enforcement of the clauses" and require "that the presumption can be overcome only by the use of clear and unambiguous contract language." Francis J. Mootz, III, *The Enforceability of Pay When Paid Clauses in Construction Contracts*, 64 Conn. B.J. 257, 265 (1990).

Emphasizing that the contract at issue clearly states the intention of the parties that the "pay if paid" language operates as a condition precedent to payment, the majority fails to consider the ever increasing recognition by scholars and courts alike that there is no true bargaining that occurs with regard to these construction contracts.[3] Both commentators and jurists have suggested that when issues concerning "pay if paid" provisions arise, contracts containing these provisions should be evaluated in terms of unconscionability due to the clearly unequal bargaining position that exists between the general contractor and the subcontractors. *See* Gerald B. Kirksey, *"Minimum Decencies"—A Proposed Resolution of the "Pay–When–Paid"/"Pay–If–Paid" Dichotomy*, 12 Construction Lawyer 1, 43–44 (Jan. 1992); *see also Clarke*, 64 Cal.Rptr.2d 578, 938 P.2d at 385, n. 2 (Chin, J., dissenting) (recogniz-

---

**1.** Statutes in both North Carolina and Wisconsin expressly make "pay if paid" or "pay when paid" clauses void as against public policy. *See* N.C. Gen.Stat. § 22C2 (1991) (Repl. Vol. 2003); Wis. Stat. Ann. § 779.135(1), (3) (2001). In addition, at least three other states have enacted legislation that limits, in some fashion, the effect of such provisions. *See* 8 *Williston on Contracts* § 19:58 at 491, n. 1 (discussing legislation adopted by Illinois, Maryland, and Missouri).

**2.** In Virginia, the introduction of parol evidence is permitted on the issue of intent to resolve the enforceability of such contract provisions. *See*

*Galloway Corp. v. S.B. Ballard Constr. Co.*, 250 Va. 493, 464 S.E.2d 349 (1995).

**3.** Some commentators have gone so far as to refer to these construction contracts as adhesion in nature given their form nature and the lack of bargaining that precedes their execution. *See* Eric N. Larson, *Freedom from the Freedom–to–Contract: California Supreme Court Invokes Public Policy to Invalidate "Pay-if–Paid" Clauses in Construction Contracts*, 21 Thomas Jefferson L. Rev. 253, 275 (Oct. 1999).

ing that pay if paid clause might be invalidated on grounds of misrepresentation, unconscionability, or contractor's inappropriate attempt to exculpate himself from liability for payment due to his misconduct); 8 *Williston on Contracts* 19:58 at 507 (recognizing that "a subcontractor is often, if not typically, at a bargaining disadvantage as compared to the contractor, and contractors may abuse either their bargaining power or the freedom from liability that a truly conditional 'pay if paid' clause gives them").

Only if it can be shown that the parties truly engaged in equal bargaining[4] and fully intended that non-payment by the owner would justify non-payment by the general contractor to the subcontractor (thereby agreeing to the shifting of the risk of non-payment) should such contractual language be upheld. The use of the terminology alone should not be conclusive evidence of such intent, given the probable lack of any true bargaining that accompanies the execution of these contracts. This area of the law is replete with reasons for concluding that the legislative policy of protecting laborers in this state tips the scales in favor of such public policy and against the freedom to enter into contracts containing these much-debated and certainly controversial conditional payment clauses.[5] Consequently, I must disagree with the majority's conclusion that the public policy inherent in the lien statutes is trumped by the freedom to contract.[6]

I also must part ways with the majority's conclusion that the surety can rely upon the "pay if paid" language to avoid complying with its contractual obligation to serve as a guarantor of payment to the affected laborers and materialmen. The majority rests its decision on the principle that "[a]s a general rule, the liability of the surety is coextensive

with that of the principal." Syl. Pt. 2, *Gateway Commun., Inc. v. Hess*, 208 W.Va. 505, 541 S.E.2d 595 (2000). Reasoning that since the general contractor has no liability given the enforceability of the "pay if paid" clause, the majority concludes that there is no liability upon which the surety can be required to pay. Other courts have squarely rejected this reasoning. In *Moore Brothers Co. v. Brown & Root, Inc.*, 207 F.3d 717 (4th Cir. 2000), the appellate court addressed "whether a surety can assert the principal's defense based on 'pay when paid' language in the subcontract, where the surety did not expressly incorporate the 'pay when paid' language into the contract payment bond." *Id.* at 723. In rejecting the surety's attempt to rely upon the contractor's defense, the Fourth Circuit reasoned:

> there is no indication that the parties intended the phrase "sums justly due" to incorporate the contingency of payment by the Owners. On the contrary, the very purpose of securing a surety bond contract is to insure that claimants who perform work are paid for their work in the event that the principal does not pay. *To suggest that non-payment by the Owners absolutely absolves the surety of its obligation is nonsensical, for it defeats the very purpose of a payment bond.*

*Id.* at 723 (emphasis supplied); *accord OBS Co. v. Pace Constr. Co.*, 558 So.2d 404 (Fla. 1990); *Brown & Kerr, Inc. v. St. Paul Fire and Marine Ins. Co.*, 940 F.Supp. 1245 (N.D.Ill.1996); *Shearman & Assoc., Inc. v. Continental Cas. Co.*, 901 F.Supp. 199 (D.Vi. 1995).

Just as in *Moore Brothers*, the payment bond in this case did not incorporate the "pay if paid" language that is set forth in the

---

**4.** The majority concludes far too easily that the subcontractors were commercially sophisticated and thus dismisses any real consideration of the lack of bargaining that goes on with regard to these construction contracts. Regardless of their level of sophistication, the reality is that if you want the work you have to sign the contract.

**5.** Noting that "the judicially elusive and practically unpredictable provision ["pay-when-paid" or "pay-if-paid"] has been the subject of debate and demand for clarification," commentators have observed that "[a]lthough debated for years,

not much has changed." William M. Hill and Donna M. Evans, *Pay When Paid Provisions: Still a Conundrum*, 18 Const. Lawyer 16, 20, n. 4 (April 1998).

**6.** If the majority's decision was affected by the general contractor's argument that absent such "pay if paid" provisions the costs associated with obtaining payment bonds would increase, I note that this contention amounts to pure conjecture as there is no supporting evidence for this claim in the record.

contract between the general contractor and the subcontractors. Because the subcontractors are suing on the payment bond and not their subcontracts, and because there is no language in the payment bond that hinges payment by the surety on the contractor's receipt of payment from the owner, there is no basis for denying the subcontractors payment under the performance bond. As the Fourth Circuit aptly noted in *Moore Brothers,* such a denial would frustrate the very purpose of the payment bond.

Based on the foregoing, I respectfully dissent.

I am authorized to state that Justice STARCHER joins in this dissenting opinion.