**FILED**
**November 2, 2017**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Nos. 16-0603 & 16-0955 – *Young v. Young*

Justice Ketchum, joined by Chief Justice Loughry, dissenting:

This is a difficult case involving a number of competing interests: the freedom to contract, a partnership's ability to craft a succession plan upon the death of one of its partners, and the policy considerations underlying our elective share statute. In my view, resolving these competing equities requires a focus on three unassailable points of law: (1) "relations among the partners and between the partners and the partnership are governed by the partnership agreement;"[1] (2) "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them";[2] and (3) the purpose behind our elective-share statute is to prevent the disinheritance of the spouse.[3]

In this case, we have a partnership agreement which: (1) existed between two partners in a closely-held partnership for twenty-six years at the time of decedent father's death, and (2) provided a clear statement, expressed in unambiguous language,

---

[1] W.Va. Code § 47B-1-3(a) [1995]. This Court has noted that our partnership law "allows for the partnership to continue even with the departure of a member because it views the partnership as an entity distinct from its partners." *Valentine v. Sugar Rock, Inc.*, 234 W.Va. 526, 541, 766 S.E.2d 785, 800 (2014) (internal citation and quotation omitted).

[2] Syllabus Point 3, *Cotiga Dev. Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962).

[3] *See generally* John W. Fisher II & Scott A. Curnutte, *Reforming the Law of Intestate Succession and Elective Shares: New Solutions to Age-Old Problems*, 93 W.Va. L. Rev. 61, 98-115 (1990).

1

regarding what would happen to the partnership upon decedent father's death.  We also have a widow who has not been "disinherited." Quite the contrary in fact—Mrs. Young has received approximately one million dollars following her husband's death.

Nevertheless, the majority opinion refused to apply the plain language of the partnership agreement, concluding that to do so would contradict the "public policies and principles of the elective share statutory scheme."  This is a curious resolution: the majority opinion rejects an unambiguous, valid partnership agreement that has been in effect for twenty-six years based on public policy concerns—the prevention of a widow being disinherited—in a case where the widow has inherited one million dollars.

The majority opinion could substantially impact every partnership agreement in West Virginia. I urge our legislature to examine this issue and invite them to provide specific guidance on the unique interests at play herein.  Guidance from the legislature would assist all West Virginia partnerships in planning how to operate following the death of a partner.

### A. Consideration

The majority opinion first concludes that the option agreement is unenforceable because it "was unsupported by consideration."  I disagree.

The option agreement was executed in 1987 and was incorporated by reference into the 1987 amended partnership agreement ("partnership agreement").[4]  The

---

[4] *See* Syllabus Point 2 of *State ex rel. U-Haul Co. of West Virginia v. Zakaib*, 232 W.Va. 432, 752 S.E.2d 586 (2013) ("In the law of contracts, parties may incorporate by reference separate writings together into one agreement. However, a general reference in one writing to another document is not sufficient to incorporate that other document into

option agreement includes the following language: "*In consideration of the promises, and the mutual covenants herein contained, and other good and valuable consideration*, it is hereby agreed as follows: 1. In the event of the death of [decedent father], [the son] shall have the option to purchase [decedent father's] interest in the partnership for the amount of Fifty Thousand Dollars." (Emphasis added). The partnership agreement includes the following provision: "The partners may not sell, convey, assign or otherwise dispose of their partnership interest except to the other partner."

The circuit court correctly determined that the partners' mutual agreement not to dispose of their partnership interest except to the other partner constituted a "restraint on the alienability of the [parties'] respective partnership interests [which] clearly meets the definition of a 'detriment' to the parties and, therefore qualifies as valid consideration."

Consideration may be demonstrated in a number of ways. "A valuable consideration may consist either in some right, interest, profit or benefit accruing to the one party *or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other*." Syllabus Point 1, *Tabler v. Hoult*, 110 W.Va. 542, 158 S.E. 782 (1931) (emphasis added). In *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 287, 737 S.E.2d 550, 556 (2012), this Court noted: "The term consideration has been defined

a final agreement. To uphold the validity of terms in a document incorporated by reference, (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship.").

as . . . some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another. A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract." [Citations and internal quotation omitted]. This Court further emphasized that consideration may consist of a detriment in *Citizens Telecomms. Co. of W.Va. v. Sheridan*, 239 W. Va. 67, ___, 799 S.E.2d 144, 149 (2017), stating, "[a] benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract. 17 Am.Jur.2d, Contracts, Section 96."

Additionally, this Court has provided that "[c]ourts of law, as a rule, will not enter upon any inquiry as to the adequacy of a consideration in a contract. They presume this to have been determined by the parties to the contract, if they are capable of contracting." *Rease v. Kittle*, 56 W.Va. 269, 49 S.E. 150, 153 (1904).[5] Also, this Court has long adhered to the principle that "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syllabus Point 3, *Cotiga Dev. Co.*

Despite the clear, unambiguous language contained in the partnership agreement demonstrating the detriment both parties agreed to undertake, the majority

---

[5] There is no question that the parties in the present case were "capable of contracting." Similarly, the plain language of the option agreement and of the partnership agreement leaves no doubt as to the intention of the parties. *See* Syllabus Point 3, *Dan Ryan Builders, Inc.,* 230 W.Va. 281, 737 S.E.2d 550 ("'The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement.' Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co*., 100 W.Va. 559, 131 S.E. 253 (1926).").

opinion concluded that the option agreement is void of consideration because it was not supported by "new consideration."  I disagree with this conclusion and find that it is at odds with our holding in Syllabus Point 6 of *Dan Ryan Builders*, wherein this Court addressed whether every clause of a contract requires individual consideration:

> The formation of a contract with multiple clauses only requires consideration for the entire contract, and not for each individual clause. So long as the overall contract is supported by sufficient consideration, there is no requirement of consideration for each promise within the contract, or of "mutuality of obligation," in order for a contract to be formed.

The option agreement is incorporated by reference into the partnership agreement.  The partnership agreement is supported by consideration—the partners' agreement not to dispose of their partnership interest except to the other partner.  Further, the option agreement, by its own terms, provides "[i]n consideration of the promises, and the mutual covenants herein contained, and other good and valuable consideration[.]"  It is not this Court's province to destroy the clear intent of parties who enter freely into written agreements.  The option agreement, incorporated by reference into the partnership agreement, is plainly supported by consideration, and expresses in unambiguous language the intent of the parties.

Because I find that the option agreement is supported by consideration, I also disagree with the majority opinion's conclusion that the option agreement is a testamentary disposition.  The majority's finding that the option agreement is an attempted testamentary disposition is premised on its conclusion that the option

5

agreement is not supported by consideration. For the reasons previously discussed, I disagree with this finding.

### B. Elective Share

The majority opinion next provides that "even if a valid contract were executed between Decedent and his son, when viewed in the face of an elective share claim by the surviving spouse, the $50,000 option price cannot be enforced against her to the extent it does not compensate her full statutory share." After examining the various equities at play, the majority opinion concludes that "the freedom to contract must give way to the elective share statute. . . . equity and the public policy behind the elective share statutes dictate that . . . the option price is ineffective and the full value of the partnership must be included in the augmented estate for purposes of calculating Mrs. Young's elective share." I disagree with the majority opinion's conclusion that freedom to contract must give way in this matter.

The elective share statute specifically exempts "enforceable claims," such as the option agreement, from inclusion in the augmented estate. Our elective share statute, W.Va. Code § 42-3-1(a) provides:

> (a) The surviving spouse of a decedent who dies domiciled in this state has a right of election, against either the will or the intestate share, under the limitations and conditions stated in this part, to take the elective-share percentage of the augmented estate, determined by the length of time the spouse and the decedent were married to each other[.]

6

Pursuant to W.Va. Code § 42-3-2(b), the augmented estate includes: "(1) The value of the decedent's probate estate,[6] *reduced by* funeral and administration expenses, homestead exemption, property exemption and *enforceable claims*[.]" (Emphasis added). The option agreement, incorporated by reference into the partnership agreement, gives the son a valid and enforceable option contract that is supported by consideration. This clear, unambiguous option contract, which had existed between the two partners for twenty-six years, plainly gives the son an "enforceable claim" against the estate.

This exception for "enforceable claims" contained in our elective share statute is consistent with this Court's long-standing recognition that the freedom to contract is sacred and should not be disregarded. "This State's public policy favors freedom of contract which is the precept that a contract shall be enforced except when it violates a principle of even greater importance to the general public." Syllabus Point 3, *Wellington Power Corp. v. CNA Sur. Corp.,* 217 W.Va. 33, 614 S.E.2d 680 (2005). This Court emphasized in *Wellington Power* that persons

> of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, *when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice*. Therefore, you have this paramount public policy to consider,—that you are not lightly to interfere with this freedom of contract.

217 W.Va. at 38, 614 S.E.2d at 685 (emphasis added).

---

[6] "'Probate estate' means property, whether real or personal, movable or immovable, wherever situated, that would pass by intestate succession if the decedent died without a valid will." W.Va. Code 42-3-2(a)(iv).

While the freedom to contract "shall be held sacred and shall be enforced by courts of justice," it is also clear that there is a substantial public policy purpose behind our elective share statute. As this Court noted in *Mongold v. Mayle*, 192 W.Va. 353, 356, 452 S.E.2d 444, 447 (1994):

> [T]he purpose behind the elective-share provision set forth in W.Va .Code, 42-3-1 [1992] is to prevent spousal disinheritance in order to ensure that the surviving spouse's contribution to the acquisition of property during the marriage is recognized and in order to ensure that the surviving spouse has continuing financial support after the death of his or her spouse.

In the present case, enforcing the clear, unambiguous language contained in the option agreement does not result in Mrs. Young being disinherited. In fact, Mrs. Young has already received approximately one million dollars and would receive an additional $50,000.00 once Mr. Young exercised his option. Therefore, applying the plain, unambiguous language contained in the option contract would be consistent with our public policy favoring the freedom to contract, and it would not frustrate the public policy underlying our elective share statutes—the disinheritance of a spouse.

### C. Limited Holding

One final note on the majority opinion's holding—the new syllabus point provides that "if a contract or contract term is a substitute for a will . . . [it] is unenforceable as against the electing surviving spouse for the purposes of determination of his or her elective share." The majority opinion determined that the option agreement was a will substitute because it was not supported by consideration. While I disagree with the majority opinion's conclusion that the option agreement in the present case lacked

8

consideration, I emphasize that an option agreement that is supported by consideration is not subject to the new syllabus point. Instead, this new syllabus point is limited to a situation in which a contract or option agreement is void of consideration and can thus be characterized as a "will substitute." An option agreement that is supported by consideration is not a "will substitute" and thus would not be subject to the new syllabus point.

### D. Valuation on Remand

The option agreement has been voided and the circuit court will need to conduct a valuation of decedent father's interest in the partnership on remand. The West Virginia Revised Uniform Partnership Act "governs partnership affairs when there is no partnership agreement, or to the extent a partnership agreement does not otherwise provide." *Valentine v. Sugar Rock, Inc.*, 234 W.Va. at 540, 766 S.E.2d at 799. *See* W.Va. Code § 47B-1-3(a) (providing that "relations among the partners and between the partners and the partnership are governed by the partnership agreement. To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership."). Under W.Va. Code § 47B-6-1(7)(i), a partner who dies is dissociated from the partnership. The "buyout price" of a dissociated partner's interest is set forth in W.Va. Code § 47B-7-1(b).