# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2021 Term

_____

No. 19-0171

_____

**FILED**
**April 1, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**HORIZON VENTURES OF WEST VIRGINIA, INC.,**
**A WEST VIRGINIA CORPORATION,**
Plaintiff Below, Petitioner

**V.**

**AMERICAN BITUMINOUS POWER PARTNERS, L.P.,**
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Marion County
The Honorable Patrick N. Wilson, Judge
Civil Action No. 18-C-76

**REVERSED AND REMANDED**

_____

Submitted: February 9, 2021
Filed: April 1, 2021

Mark A. Kepple
Bailey & Wyant, PLLC
Wheeling, West Virginia
Attorney for the Petitioner

John F. McCuskey
Roberta F. Green
Shuman, McCuskey, & Slicer PLLC
Charleston, West Virginia
Attorneys for the Respondent

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICES HUTCHISON and WOOTON concur and reserve the right to file concurring opinions.**

## SYLLABUS BY THE COURT

1.      "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963)." Syllabus point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992).

3.      "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus point 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

4.      "If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further

i

discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus point 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

5.      "'The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written.  The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case.'  Syllabus Point 12, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)."  Syllabus point 4, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012).

6.      "'A contract term is unenforceable if it is both procedurally and substantively unconscionable.  However, both need not be present to the same degree.  Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.'  Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)." Syllabus point 9, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012).

7.     "'Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.' Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)." Syllabus point 10, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012).

8.     "This State's public policy favors freedom of contract which is the precept that a contract shall be enforced except when it violates a principle of even greater importance to the general public." Syllabus point 3, *Wellington Power Corp. v. CNA Surety Corp.*, 217 W. Va. 33, 614 S.E.2d 680 (2005).

9.     "'The judicial power to declare a contract void as contravening sound public policy "is a very delicate and undefined power," and should be exercised only in cases free from doubt. *Richmond v. [Dubuque and Sioux City] Railroad Co.*, 26 Iowa[] 191.' Syllabus Point 1, *Barnes v. Koontz*, 112 W. Va. 48, 163 S.E. 719 (1932)." Syllabus

point 4, *Wellington Power Corp. v. CNA Surety Corp.*, 217 W. Va. 33, 614 S.E.2d 680

(2005).

**Jenkins, Chief Justice:**

On June 25, 1987, Petitioner Horizon Ventures of West Virginia ("Horizon") and Respondent American Bituminous Power Partners ("AMBIT") entered into a Contract and Agreement ("consulting agreement") whereby Horizon was to "provide expertise and consulting services" to AMBIT in exchange for the annual sum of $50,000.00 "as long as [the AMBIT Grant Town Power Plant] continues to produce power." The parties operated under this agreement from 1987 until 2018 when AMBIT refused to continue to pay Horizon. Upon this refusal to pay, Horizon instituted a breach of contract action against AMBIT. After a limited amount of discovery, in its order dated January 30, 2019, the circuit court granted AMBIT's motion for summary judgment finding that the consulting agreement was substantively unconscionable and violative of public policy. On appeal, Horizon asserts that the circuit court erred by finding the consulting agreement to be unconscionable. AMBIT contends to the contrary that the circuit court correctly resolved the matter by finding the consulting agreement substantively unconscionable and granting it summary judgment.

Upon careful consideration of the briefs and arguments of counsel, the record accompanying the appeal, the pertinent facts, and the relevant law, we find that the circuit court erred in finding the consulting agreement unconscionable without finding both procedural and substantive unconscionability. Accordingly, we reverse the summary judgment order and remand the case for further proceedings consistent with this opinion.

1

**FACTUAL AND PROCEDURAL HISTORY**

The parties entered into a consulting agreement on June 25, 1987.[1] The relevant portions of the consulting agreement are as follows. AMBIT was "engaged in a venture of establishing one or more electric power plants in the State of West Virginia[.]" The parties "negotiated an agreement wherein [Horizon] will provide expertise and consulting services within its field to [AMBIT] in its projects in West Virginia[.]" In particular, it was agreed that Horizon

> [w]ill perform from time to time upon the reasonable request of [AMBIT], such public and governmental relations and liaison functions as are necessary or incident to aiding and assisting [AMBIT] in locating, permitting, licensing, developing, maintaining[,] and operating power plants in the State of West Virginia and will further aid in such other ventures as locating coal "gob" and all like coal resources when the same may be needed by [AMBIT].

In exchange for these services, AMBIT agreed to pay an initial sum of $50,000.00 once AMBIT had completed the construction of its initial power plant, the Grant Town Power Plant in Grant Town, West Virginia. AMBIT agreed to pay the same $50,000.00 sum each succeeding year "as long as said power plant continue[d] to produce power." The

---

[1] Aside from this consulting agreement, in the 1980s Horizon and AMBIT entered into a separate landlord-tenant lease agreement wherein AMBIT operates the Grant Town Power Plant on a parcel of property owned by Horizon. *See Am. Bituminous Power Partners, L.P. v. Horizon Ventures of W. Va., Inc.*, No. 14-0446, 2015 WL 2261649, at *1-2 (W. Va. May 13, 2015) (memorandum decision). The lease agreement has been amended and restated on numerous occasions. *Id.* at *2. The terms of this agreement have no relevance to the matter presently before us.

consulting agreement "set[] forth the entire understanding and agreement between the parties. It may not be amended, terminated[,] or otherwise changed except by a writing signed by both parties." Lastly, the consulting agreement was "binding on the parties [], their successors[,] and assigns."[2] The president of AMBIT, Richard J. Halloran ("Mr. Halloran"), signed the consulting agreement on behalf of AMBIT, and Horizon's then-president, Andrew Noshagya, Jr. ("Mr. Noshagya"), signed it on behalf of Horizon.[3]

For approximately the next thirty years, the parties operated pursuant to the consulting agreement. However, by 2017, AMBIT asserts that the parties' relationship had deteriorated and Horizon had filed various lawsuits against AMBIT.[4] On December 26, 2017, Horizon sent AMBIT its annual invoice for the $50,000.00, pursuant to the consulting agreement, requesting that the money be paid no later than January 15, 2018.[5] By letter dated January 27, 2018, AMBIT's executive director responded to Horizon noting

---

[2] The appendix record before us includes an unexecuted amendment to the consulting agreement. For the purposes of this appeal, the amendment is not relevant.

[3] The consulting agreement was also signed by Peter A. McGrath, president of Hydro Management Corp. However, this has no relevance to the current appeal.

[4] There is a significant amount of discussion throughout the pleadings, filings, and depositions below that address the litigation history between the parties. Essentially, AMBIT asserts that over the years Horizon has instituted litigation against it on several occasions. AMBIT avers that during these times of litigation, Horizon has disparaged AMBIT and broken any trust between the two entities.

[5] The invoice provides that the payment was due no later than January 15, 2017; however, this appears to be a typographical error.

that their relationship had become "considerably strained over the past several years due primarily to the ongoing litigation." Additionally, AMBIT stated that it

> ha[s] been engaged before the [Public Service Commission] in a battle for [its] very existence, and part of that process has mandated that [it] review every invoice with an eye to value for services rendered. With that in mind, we have taken a frank and full look at the relationship between us and at the Consulting Agreement. Given the realities of both, we believe the Consulting Agreement has no value to [AMBIT] and that it is time to disband the Agreement and simplify our relationship to just landlord-tenant.

On May 14, 2018, as a result of AMBIT's failure to pay the annual $50,000.00, Horizon filed a complaint for breach of contract in the Circuit Court of Marion County. Essentially, the complaint recounted the terms of the consulting agreement. Furthermore, the complaint alleged the following: (1) AMBIT has paid the amount due under the agreement to Horizon each and every year since the parties entered the agreement in 1987; (2) Horizon "has and remains able and ready to perform under the contract[;]" and (3) AMBIT has failed to pay Horizon for the current year in breach of the consulting agreement.

AMBIT responded to the complaint on June 13, 2018, with a motion to dismiss or, in the alternative, for summary judgment ("motion to dismiss") pursuant to Rules 12(b)(6) and 56 of the West Virginia Rules of Civil Procedure. AMBIT articulated several arguments to support the motion to dismiss, including but not limited to that the contract at issue was not enforceable because it was unconscionable, violated public policy,

4

and was impossible to perform given that its purpose had been frustrated and the circumstances between the parties had changed. In reply, Horizon filed a memorandum in opposition and an affidavit of its current president, Stanley Sears ("Mr. Sears"), stating that he is familiar with the consulting agreement; that Horizon "stands ready[,] able[,] and willing to perform in good faith;" and that "the goals of the parties to the [c]ontract are similar and that . . . it is in the best interest of both parties to keep the Grant Town Power Plant operated by [AMBIT] open, viable, and profitable."

A hearing on the motion to dismiss was held on August 7, 2018. By order dated August 14, 2018, the circuit court denied the motion to dismiss and deferred ruling on the motion for summary judgment until discovery in the matter had been conducted. Subsequently, on September 13, 2018, Mr. Sears, as president of Horizon, was deposed, and on November 30, 2018, Horizon's Rule 30(b)(7) deposition of Mr. Halloran, president of AMBIT, was conducted.

AMBIT filed a renewed motion for summary judgment in November 2018,[6] based on several grounds. First, similar to the previous motion to dismiss, AMBIT asserted that the consulting agreement was "unenforceable as written because it is unconscionable, violative of public policy[,] and impossible to perform, given the frustration of its purpose

_____

[6] The renewed motion for summary judgment was filed before a scheduling order was even entered in this matter, as the scheduling order was not entered until December 4, 2018.

5

and the changed circumstances between the parties." Relevant to this appeal, AMBIT averred that the circuit court should "refuse to enforce the Agreement based solely on the substantive unfairness of the agreement between the parties." (Footnote omitted). Horizon filed a response in opposition asserting only that the motion for summary judgment should not be granted at this stage because discovery had just begun and additional discovery was necessary. AMBIT filed a reply.

On December 6, 2018, the circuit court held a hearing on the renewed motion for summary judgment. The circuit court granted the motion for summary judgment by order entered on January 30, 2019. In its order, the circuit court observed that the renewed motion for summary judgment was based on numerous grounds. The circuit court further noted that while "there may or may not be issues of fact were the case to survive summary judgment, the [c]ourt's decision turns wholly on a determination of law and thus, is ripe for summary judgment." Specifically, the circuit court based its decision "on its finding that the contract between the parties is unconscionable." It found AMBIT's remaining positions to be "too weighted in factual determinations for the [c]ourt to consider for purposes of summary judgment. The [c]ourt's decision [wa]s made only on one narrow issue of law."

With regard to unconscionability, the circuit court explained that pursuant to the law of West Virginia, the court must "analyze unconscionability of a contract term in

terms of two component parts: procedural unconscionability and substantive unconscionability." The circuit court went on to find that

> [n]either party assert[ed] that the relative positions of the parties or the adequacy of the bargaining positions by either party in 1987 was unconscionable. There is no allegation that sufficient experience, education, training, ability, or knowledge was lacking by either party at the initiation of the contract. Therefore, the focus of the Court's analysis is one of substantive unconscionability – specifically, a concern of the lack of meaningful alternatives and the existence of unfair terms in the contract.

The circuit court reasoned that the contract was substantively unconscionable because, "[a]s written, the contract will run in perpetuity with no end in sight absent one of two very specific occurrences." Those occurrences are: (1) the power plant at issue in the consulting agreement ceases to operate or (2) the contract may be terminated by the will of the parties through mutual consent of the parties and in writing. The court further remarked that there was "no evidence, suggestion, or allegation proffered by either party that there is any plan for or situation which would require the power station to cease operations." In addition, the court found the termination provision to be

> so one-sided and favorable to [Horizon] that the lack of a unilateral escape clause, including notice and/or consequential provisions stemming from unilateral withdrawal, and a requirement of payment into what amounts to eternity but for cessation of business, regardless [of] the bargaining position of the parties, is so outrageous and oppressive that public policy mandates that the contract be disbanded rather than enforced.

Finally, the court with scant discussion, stated that despite the consulting agreement being unenforceable, AMBIT had waived its unconscionability argument until June 2018 when

AMBIT first raised the issue of unconscionability in its alternative motions in response to Horizon's complaint. Accordingly, the court granted judgment to Horizon as to the fees due and owing for the 2018 year.[7] This appeal followed.[8]

## II.

## STANDARD OF REVIEW

Horizon requests that we reverse the circuit court's grant of summary judgment to AMBIT. We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In undertaking a *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court. Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). Pursuant to that standard,

> "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992).

---

[7] AMBIT has not asserted a cross-assignment of error regarding this ruling.

[8] We note that Horizon was originally represented by Gregory H. Schillace, who filed the briefing on Horizon's behalf in this matter. However, on September 21, 2020, this Court granted Mr. Schillace's motion to withdraw as counsel. On November 10, 2020, Mark A. Kepple filed his notice of substitution of counsel on Horizon's behalf. Mr. Kepple appeared at oral argument in this matter.

Furthermore, this Court has held that

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). Finally, a court is to apply a burden-shifting analysis to determine if summary judgment is warranted:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syl. pt. 3, *id*. With these standards of review in mind, we will consider the parties' arguments.

## III.

## DISCUSSION

Horizon raises a single assignment of error in this appeal: the circuit court erred in its determination that the June 25, 1987 consulting agreement was unconscionable. Horizon argues that the circuit court erred because without a finding of both procedural

and substantive unconscionability, a contract cannot be determined to be unconscionable.[9]

On the other hand, AMBIT contends that the circuit court properly reached the right conclusion that the consulting agreement was unconscionable pursuant to West Virginia law and policy; Horizon did not raise the issue of procedural unconscionability below and is now precluded from doing so; and, despite the circuit court's failure to make an express finding on this point, this Court can find that the consulting agreement is also procedurally unconscionable. We agree with Horizon and find that the circuit court's summary judgment ruling was in error.

This Court's law regarding the doctrine of unconscionability is well-established. In *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012) ("*Brown II*"), we adopted several syllabus points regarding the doctrine of unconscionability and how to analyze both procedural and substantive unconscionability. In Syllabus point 4 of *Brown II*, we defined the doctrine of unconscionability and held that

> "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a

---

[9] Horizon further asserted in this same assignment of error that the circuit court erred by granting summary judgment five months prior to the close of discovery "providing an insufficient record for the circuit court as well as this Court to make any determination as to the existence of substantive unconscionability based upon the totality of the interactions between the [parties]." Given our disposition, we need not examine this issue.

particular case." Syllabus Point 12, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011).

229 W. Va. 382, 729 S.E.2d 217. We went even further by holding in Syllabus point 9 of

*Brown II* that

> "[a] contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011).

229 W. Va. 382, 729 S.E.2d 217.


Based upon the above syllabus points in *Brown II*, this Court consistently has

made clear that "[u]nder West Virginia law, we analyze unconscionability in terms of two

component parts: procedural unconscionability and substantive unconscionability. *To be

unenforceable, a contract term must—at least in some small measure—be both

procedurally and substantively unconscionable.*" *Dan Ryan Builders, Inc. v. Nelson*, 230

W. Va. 281, 289, 737 S.E.2d 550, 558 (2012) (emphasis added) (internal citations and

quotations omitted). *Accord Rent-A-Ctr., Inc. v. Ellis*, 241 W. Va. 660, 674, 827 S.E.2d

605, 619 (2019) ("To prevail on her unconscionability argument involving the delegation

clause at issue here, Respondent must show both procedural and substantive

unconscionability, at least in some measure. Because we conclude that no procedural

unconscionability exists with respect to the delegation clause, we need not evaluate

whether substantive unconscionability exists." (footnotes omitted)); *Hampden Coal, LLC v. Varney*, 240 W. Va. 284, 295, 810 S.E.2d 286, 297 (2018) ("Mr. Varney must establish *both* substantive *and* procedural unconscionability before the Agreement can be deemed unenforceable. . . . Inasmuch as we have determined that the Agreement is not substantively unconscionable, we need not address the issue of procedural unconscionability."); *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 228 W. Va. 125, 136, 717 S.E.2d 909, 920 (2011) ("A contract term is unenforceable if it is both procedurally and substantively unconscionable." (quotations omitted)). Consequently, we apply a sliding scale when analyzing procedural and substantive unconscionability; but, to render a contract unenforceable this Court requires a finding that the contract is, at least in some degree, *both* procedurally and substantively unconscionable.[10]

Turning to the present matter, although the circuit court ultimately found the consulting agreement to be unconscionable, and therefore unenforceable, in analyzing the

---

[10] AMBIT even conceded in its response brief on appeal that

> West Virginia law does in the abstract require both substantive and procedural unconscionability, but they operate on a sliding scale. The more of one found within the contract, the less needed of the other to find unconscionability. Judge Wilson found overwhelming substantive unconscionability that, combined with the public policy violations, obviated the need for procedural unconscionability and mandated dismissal.

Brief of Respondent at 14 (footnote omitted).

issue of unconscionability the circuit court did not find that the consulting agreement was both procedurally and substantively unconscionable. The circuit court's sole discussion of procedural unconscionability in this matter was as follows: "[n]either party asserts that the relative positions of the parties or the adequacy of the bargaining positions by either party in 1987 was unconscionable. There is no allegation that sufficient experience, education, training, ability, or knowledge was lacking by either party at the initiation of the contract."[11] Accordingly, the circuit court did not make any finding that the consulting agreement at issue was procedurally unconscionable. Therefore, the circuit court erred in finding the consulting agreement unconscionable without finding even a sliver of procedural unconscionability.

Despite the circuit court irrefutably failing to make a finding that there was any degree of procedural unconscionability, AMBIT argues on appeal that we should not examine the issue because Horizon failed to preserve the issue below. While we acknowledge that Horizon did not raise the issue of procedural unconscionability in its response to AMBIT's motion for summary judgment, we find that a responsive argument from Horizon was unnecessary to preserve the issue for appeal. Simply put, AMBIT's argument that this issue was waived misunderstands the parties' respective burdens at the summary judgment stage.

---

[11] The circuit court went on to state that "the focus of the [c]ourt's analysis is one of substantive unconscionability – specifically a concern of the lack of meaningful alternatives and the existence of unfair terms in the contract."

As this Court consistently has held,

> "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

Syl. pt. 1, *Andrick*, 187 W. Va. 706, 421 S.E.2d 247. We further have held that a court is to apply a burden-shifting analysis when making its determination of whether summary judgment is warranted:

> *If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party* who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syl. pt. 3, *Williams*, 194 W. Va. 52, 459 S.E.2d 329 (emphasis added). Additionally, as this Court has found "[t]he burden of proving that a contract term is unconscionable rests with the party attacking the contract." *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 680, 724 S.E.2d 250, 284 (2011), *overruled on other grounds by Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) ("*Brown I*").

Here, AMBIT moved for summary judgment and challenged the validity of the parties' consulting agreement; thus, AMBIT bore the burden of properly supporting its

14

motion on the issue of the agreement's unconscionability. Accordingly, as its initial step in obtaining summary judgment, AMBIT had to "show by affirmative evidence that there is no genuine issue of a material fact." Syl. pt. 3, in part, *Williams*, 194 W. Va. 52, 459 S.E.2d 329. AMBIT failed to meet its initial burden as to unconscionability, and consequently summary judgment, because it did not offer the circuit court any argument that the consulting agreement was procedurally unconscionable, and, in fact, stated to the circuit court that it could grant summary judgment based on substantive unconscionability alone, in spite of our clear law to the contrary.[12] Therefore, a responsive argument from Horizon was not necessary to preserve the issue for appeal because AMBIT failed to meet its burden of properly supporting its motion in the first instance.[13]

_____

[12] To the extent that AMBIT relied on *Blackrock Capital Investment Corporation v. Fish*, 239 W. Va. 89, 799 S.E.2d 520 (2017) for its argument, while *Blackrock* was a case decided by this Court, it applied New York contract law, not West Virginia contract law. Significantly, New York unconscionability law is different from West Virginia unconscionability law in one very important way: New York allows a finding of unconscionability on substantive unconscionability, alone, to render a contract unenforceable, while West Virginia law requires a finding of *both* procedural *and* substantive unconscionability to invalidate a contract. *See Blackrock*, 239 W. Va. at 97 n. 22, 799 S.E.2d at 528 n. 22 ("Unlike West Virginia, several New York cases have found exceptional circumstances 'where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone.' *Gillman* [*v. Chase Manhattan Bank, N.A.*], [73 N.Y.2d 1,] 537 N.Y.S.2d 787, 534 N.E.2d [824,] 829."). *See also Vilella v. AT&T*, 35 Misc. 3d 1224(A), Slip Op. 50853(U), (N.Y. Sup. Ct., N.Y. County 2012) ("Procedural and substantive unconscionability operate on a sliding scale . . . and under certain circumstances substantive elements alone may be sufficient to render the terms of a contract unenforceable. *See Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246 (1st Dept 1998). Such a determination requires extreme cases where the contractual terms are 'so outrageous and oppressive as to warrant a finding of unconscionability irrespective of the contract formation process.' *Id.* at 68.").

[13] *See Aardema v. U.S. Dairy Sys., Inc.*, 215 P.3d 505, 513 (Idaho 2009) ("The moving party bears the burden of establishing the absence of a genuine issue of

15

Next, AMBIT argues that even if we find that the circuit court's order was deficient by failing to determine that the consulting agreement was procedurally unconscionable, this Court can uphold the circuit court's decision on its own finding of procedural unconscionability. In Syllabus point 10 of *Brown II*, we held that

> "[p]rocedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011).

229 W. Va. 382, 729 S.E.2d 217. Considering the factors outlined in *Brown II*, we are not persuaded that procedural unconscionability exists in the matter *sub judice*. Horizon and AMBIT are two sophisticated businesses. There is no evidence of uneven bargaining power; any adhesion; or hidden or unduly complex contract terms. While there is some dispute as to which party drafted the consulting agreement, there is evidence that the parties

---

material fact. Thus, it follows that if the moving party fails to challenge an element of the nonmovant's case, the initial burden placed on the moving party has not been met and therefore does not shift to the nonmovant. . . Therefore, the burden never shifts to the non-movant to oppose the motion if the movant fails to raise the issue in the first place." (internal quotations and citations omitted)).

16

had lawyers in general, and each was a party to other commercial contracts around the same time that the consulting agreement was executed.

AMBIT further argues that "procedural unconscionability could be found in the argument and pleadings below in the context of failure of meeting of the minds." Brief of Respondent at 23 (footnote omitted). In particular, AMBIT contends that the consulting agreement was "so fraught with inequities, improprieties, unfairness, and other inadequacies that the only explanation is that no meeting of the minds could have occurred." *Id.* (footnote omitted). We find this argument to be convoluted and misplaced.

From what we can discern, AMBIT is simply using the definition of procedural unconscionability and arguing that the lack of a unilateral exit clause is so extreme that no meeting of the minds occurred. In support of this argument, AMBIT relies on testimony from Mr. Halloran, where he stated that "I did not imagine that anybody would ever try and claim that we were stuck with this thing no matter what happened." AMBIT further argues that had it "known Horizon's true nature or if AMBIT had known that Horizon would undercut and malign it at every turn or that Horizon would flatly refuse to exercise the termination clause, it would have never entered this relationship." (Respondent's Brief at 24). However, AMBIT fails to appreciate that, at the heart of procedural unconscionability, a lack of meeting of the minds is evidenced by "inequities, improprieties, or unfairness *in the bargaining process and formation of the contract*." Syl. pt. 10, in part, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217 (emphasis added). By contrast,

17

in its arguments on appeal regarding procedural unconscionability, AMBIT is muddying

the waters between general mutual assent in contract formation,[14] mutual obligation in

substantive unconscionability,[15] and inequities that lead to a lack of the meeting of the

[14] This Court has described mutual assent in contract formation as follows:

West Virginia contract law requires mutual assent to form a valid contract. *See Ways v. Imation Enterprises Corp.*, 214 W. Va. 305, 313, 589 S.E.2d 36, 44 (2003) [(per curiam)] ("'It is elementary that mutuality of assent is an essential element of all contracts.'" (internal citations omitted)). "'In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement. . . .'" *Id.* (quoting *Bailey v. Sewell Coal Co.*, 190 W. Va. 138, 140-41, 437 S.E.2d 448, 450-51 (1993) (citations omitted)). Indeed, "[t]he contractual concept of 'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Group, Inc.*, 222 W. Va. 410, 418, 664 S.E.2d 751, 759 (2008) [(per curiam)].

*New v. GameStop, Inc.*, 232 W. Va. 564, 572-73, 753 S.E.2d 62, 70-71 (2013) (per curiam) (footnote omitted).

[15] As we held in Syllabus point 10 of *Dan Ryan Builders*,

[i]n assessing whether a contract provision is *substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation.* If a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable.

230 W. Va. 281, 737 S.E.2d 550 (emphasis added).

minds in procedural unconscionability. Procedural unconscionability involves "a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, *considering all the circumstances surrounding the transaction*." Syl. Pt. 17, in part, *Brown I*, 228 W. Va. 646, 724 S.E.2d 250 (emphasis added). Here, there are no allegations that inequities, improprieties, or unfairness existed in the bargaining process or formation of the contract in this particular case, nor can we discern any.[16] Therefore, we find that the consulting agreement was not procedurally unconscionable. Because we find the consulting agreement not to be procedurally unconscionable, we need not examine substantive unconscionability, and the circuit court erred in granting summary judgment based upon unconscionability.

Moreover, we acknowledge that the circuit court found the consulting agreement to be unenforceable not only because it was substantively unconscionable, but

---

[16] Furthermore, assuming without deciding that this evidence is appropriate to construe this consulting agreement, and even if we found that AMBIT's argument was legally sound, it still was unable to meet the summary judgment standard. Specifically, in support of its argument that the consulting agreement is so unfair and one-sided, as to be procedurally unconscionable, AMBIT relies on deposition testimony by Horizon's president, Mr. Sears in which he stated that it was not in Horizon's interest to agree to AMBIT's request to terminate the consulting agreement, *i.e.*, that AMBIT foresaw the arrangement lasting for "eternity," as the circuit court put it. However, AMBIT's 30(b)(7) witness, Mr. Halloran—who was a signatory to the consulting agreement—testified that when he signed the agreement, he expected the plant to operate for approximately thirty-five years. Taking the inference in Horizon's favor, as we are required to do on summary judgment, it is reasonable to infer from that testimony that AMBIT expected the consulting agreement to end after thirty-five years. Accordingly, there are disputed facts as to whether the consulting agreement is even, in fact, a perpetual contract.

19

also because it violated public policy. In effect, the circuit court's reasoning for the public policy violation is the same as its reasoning for finding substantive unconscionability: the consulting agreement lacked escape terms or a definite contractual term.

Regarding contracts and public policy concerns, this Court has stated "that the freedom to contract is a substantial public policy that should not be lightly dismissed." *Wellington Power Corp. v. CNA Sur. Corp.*, 217 W. Va. 33, 38, 614 S.E.2d 680, 685 (2005). In *Wellington Power Corp.*, we further observed that:

> In the case of *State v. Memorial Gardens Development Corp.*, 143 W. Va. 182, 101 S.E.2d 425 (1957), we quoted the following language with which we still strongly agree:
>
> > [Y]ou are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider,—that you are not lightly to interfere with this freedom of contract.
>
> 143 W. Va. at 191, 101 S.E.2d at 430, *quoting Baltimore & Ohio Southwestern Railway Co. v. Voigt*, 176 U.S. 498, 20 S. Ct. 385, 387, 44 L. Ed. 560 (1900).

217 W. Va. at 38, 614 S.E.2d at 685. Moreover, in *Wellington Power Corp.*, this Court held that

> 3. This State's public policy favors freedom of contract which is the precept that a contract shall be enforced except when it

20

violates a principle of even greater importance to the general public.

4. "The judicial power to declare a contract void as contravening sound public policy 'is a very delicate and undefined power,' and should be exercised only in cases free from doubt. *Richmond v.* [*Dubuque and Sioux City*] *Railroad Co.*, 26 Iowa[] 191." Syllabus Point 1, *Barnes v. Koontz*, 112 W. Va. 48, 163 S.E. 719 (1932).

Syl. pts. 3 and 4, *Wellington Power Corp.*, 217 W. Va. 33, 614 S.E.2d 680. However, we have opined that the "[f]reedom to contract, . . . is not unfettered. This Court has recognized that no action can be predicated upon a contract of any kind or in any form which is expressly forbidden by law or otherwise void." *Wellington Power Corp.*, 217 W. Va. at 39, 614 S.E.2d at 686 (internal citations and quotations omitted).

Turning to the present matter, the circuit court failed to acknowledge that voiding contracts as violative of public policy should be done only when free from doubt. Importantly, the circuit court offered no authority to support its finding that the consulting agreement in this case, specifically the lack of a unilateral escape clause, rose to the level of violating public policy. Similarly, on appeal and below, AMBIT failed to identify any authority in West Virginia to support its position that this consulting agreement violates public policy. Indeed, AMBIT relies on *Blackrock Capital Investment Corporation v. Fish*, 239 W. Va. 89, 799 S.E.2d 520 (2017); however, while *Blackrock* was a case decided by this Court, it applied New York contract law, not West Virginia contract law. *See Blackrock Capital Inv. Corp.*, 239 W. Va. at 101, 799 S.E.2d at 532 ("New York courts have said that contracts must have 'at least a fair quantum of remedy for breach of the

21

obligations or duties outlined in the contract,' and any contract clause modifying or limiting remedies 'in an *unconscionable* manner is subject to deletion and in that event the remedies made available . . . as if the stricken clause had never existed.'" (citation omitted)). Moreover, in *Blackrock*, relying on New York contract law, we found the provisions at issue to be unconscionable; there was no specific discussion as to public policy concerns. Accordingly, neither the circuit court nor AMBIT has provided us with any support that the consulting agreement violated public policy. Consequently, we find that the circuit court erred in granting summary judgment by finding that the consulting agreement violated public policy.[17]

---

[17] As previously noted herein, assuming without deciding that this evidence is appropriate to construe this consulting agreement, AMBIT failed to meet the summary judgment standard. Even if AMBIT had been able to support its position that this consulting agreement is a perpetual agreement and violative of public policy, it once again relies on the same disputed deposition testimony by Mr. Sears in which he stated that it was not in Horizon's interest to agree to AMBIT's request to terminate the consulting agreement, *i.e.*, that Horizon foresaw the arrangement lasting for "eternity." Accordingly, there remain disputed facts regarding the precise nature of the consulting agreement that render summary judgment improper. *See, e.g.*, Syl. pt. 1, in part, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (holding that summary judgment should be granted "only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.").

## IV.

## CONCLUSION

For the reasons set forth above, this Court reverses the January 30, 2019 order of the Circuit Court of Marion County, granting AMBIT's renewed motion for summary judgment, and remands this case for further proceedings consistent with this opinion.

Reversed and remanded.